Chief Justice Robertson,
delivered the opinion of-the court.
On the ‘21st of September, L82L, James Allen, the appellant, gave to Sykes and Little, the appellees, the tollo'.ring obligation:
“1 hereby oblige myself to draw on my commission merchant, in New Orleans, for the sum of $2,777 30 cents, when the tobacco which 1 intend shipping the next season arrives in New Orleans, in favor of Sykes and Little; or in case I choose to consign said tobacco to Sykes, one of the aforesaid parties, in that case,, said Sykes and Little are to sell said tobacco, for tlie best price they can, and after paying costs and charges out of the tobacco, to apply the proceeds to the payment of the above amount, and if- there remains any surplus, that balance to be subject to my order.”
(Signed). JAMES ALLEN.”
On the 22nd of June, 1822, Sykes and Little gave the following receipt:
“Received of Robert Allen fifty nine hogsheads of tobacco, the nett proceeds, of winch is to be placed to the credit of James Allen, when sold.”
(Signed) SYKsiS & LITTLE.”
The appellees sued the appellant on the foregoing-covenant, averring a failure to draw on the commission. merchant, and also to consign the tobacco co Sykes, or • to pay the fj2,777 3 cents; and the appellant also sued the appellees in assumpsity for failing to- sell the tobacco for which they had given their receipt, or account to him for the price. The two cases having been consolidated by consent, were tried together on the general issues, with leave to give any thing in evidence which might have been pleaded. A jury having found a verdict for the appellant, for f>l 72 cents in the action of assumpsit, and a verdict against the appellees in the action of covenant, the circuit court,. on .the motion of the appellees, granted a new trial, on the ground that the evidence did not, in the opinion of the judge *612 authorize the verdicts. On the next trial, a verdict-' was returned in favor of the appellees for $1658, in damages in the action of covenant, and against the appellant in the action of assumpsit; and the court having overruled a motion for a- new trial,- and rendered judgments on the verdicts, this appeal is prosecuted by Allen to reverse the judgments.
Only two questions are presented for consideration. 1st. Did the court err in overruling the appellant’s motion for a new trial? 2nd. Did it err in granting' a new trial to the appellees? The court gave an instruction to the jury on the last trial, but as there was no exception to it, we shall not consider it, except so far as it may be involved incidentally in consideration of the propriety of the last verdict.
The following is a synopsis of all the evidence com tained in the record. In the spring 1822, Robert Allen shipped to Orleans, twenty fivehogsheads of tobacco in his own name, and fifty hogsheads in the joint-names of himself and J. Allen, (his father,) and purchased at Orleans, about seventy hogsheads, which had been. carried thither by-Rhodes. Having sol'd to Proud-fit sixty one hogsheads selected from the whole quantity, as the best quality, he delivered to the appellees, fifty nine hogsheads of what remained unsold, and took from them the receipt which has been quoted. At the dale of the receipt, first rate tobacco was estimated at from four .to five dollars a hundredweight; .and tobacco of inferior quality, at from one and a quarter to- ’ three dollars and fifty cents; but it was “dull” at those prices, and was declining. The fifty nine hogsheads were shipped to New York, and were there sold for a price, which, after deducting incidental costs, left in the hands of the appellees a sum less than that due to them by the appellant, by about the amount of the judgment in their favor. When the receipt was given, the appellees suggested the propriety of sending the tabacco to New York to be sold. Robert Allen swears, that he replied that he would not take on himself the responsibilty of directing *i shipment to New York, but would defer to the counsel of the commission merchant, with wo.om he had, on his arrival at Orleans, deposited the tobacco. The commission merchant was present and gave his opinion, but what it was. w< *613 ¿tie left only to infer. When Robert Allen purchased the seventy hogsheads from Rhodes, he stated that he bad intended to send it to New York; about the time when the receipt was given, he said that the tobacco was to be shipped to New York; and after he returned to Kentucky he stated that it had been so shipped.
Prior to the receipt, he hncl himself shipped twenty of the fifty nine hogsheads to Arew York; this we are bound to infer from the testimony of Robert Allen himself, (who swore that he had shipped twenty of the fifty" nine hogsheads to New York, before the date of the receipt; but afterwards, on cross examination, stated that the twenty hogsheads which he had shipped to New York, might not have been included in the receipt, but might have been shipped on some other account, but that he did not recollect of shipping to New York any tobacco which was not included in the receipt,) and also from the testimony of Atwood, who swore that Robert Allen shipped some tobacco to New York, prior to the date of the receipt by the appellees for fifty nine hogsheads.
The foregoing facts are sufficient to justify the last verdict. The jury had a right to infer from them, that the tobacco, was shipped to New York, at the instance, or with the concurrence of Robert Allen; and the) had aright albo to infer, that Robert Allen had authority, either delegated to him as agent, or derived from his actual or ostensible proprietorship as a partner with his father, sufficient to excuse the appellees for any alleged breach of duty in selling the tobacco in New York.
Robert Allen swore that he had no authority from his father to ship; or authorize the appellees to ship the tobacco to New York. But this means only that he had no express authority or instruction to that eftect, and is not inconsistent with a rational and allowable inference, that even if he had no interest in the tobacco, he had an implied general authority as agent to sell, to buy, or dispose of tobacco for his father, in any manner which he should deem most prudent and expedient, especially as he had purchased a part of the tobacco at Orleans, and had shipped some of it to New York before the receipt was given; and as there is no proof of any special or limited agency.
If authority of agent be not in fact general, yet if bills of Ruling and acts done indicate general power as regards the subject mat ter of bis a gfiicy; unless notice,be shewn bis authority to control, the articles entrusted to his care, will be deemed adequate.
Error to set aside a verdict if the evidence would an thorizc jury to find for either party.
Bui, if as agent, his authority was, in fact, special ana not general, the bills of lading and his own acts proved that he was either an actual or ostensible partner; and therefore, so far as the appellees are concerned, his authority to control the tobacco, was sufficient to justify the sale by them in New York, unless they had been notified that his apparent was inconsistent with his r.al power. Besides, the jury had a right to infer that the appellees had no other motive for selling the tobacco in New York, than a desire to promote the interest of the appellant, and that they acted throughout, in perfect good faith. We need not here decide .whether the inferences, which we have mentioned as allowable, are such natural and necessary deductions from the facts, as would have rendered a new trial proper, if the verdict had been in favor of the appellant. It is sufficient, so far as the last verdict is concerned, that the facts are such as to justify the inferences which the jury have drawn from them; and, therefore,-as the verdict is for no more than those inferences authorized, it was proper to overrule the appellant’s motion for a new trial.
But if the facts would have authorized a jury to find for either party, the circuit court erred in setting aside the first verdicts; and therefore, we must now determine, whether or not the first verdicts were so-obviously contrary to the evidence, as to justify the new trial which was granted to the appellees.
It is manifest that there was no evidence which authorized the verdict for the appellant in the action of assumpsit.
There is no complaint, nor any cause for complaining, that there was any want of fidelity in vending the tobacco, or of fairness in accounting correctly for the proceeds. The complaint is, that the sale was not made at the proper place. Now waiving, as we shall now do, a consideration of the propriety of the remedy, and of the question, whether or not, there was any evidence of an assumpsit to sell the tobacco at Orleans, the facts did not, according to any hypothesis, even the most favorable to the appellant, authorize the verdict for damages. If his action could be main-famed, he had a right to recover only so far as he had *615 been damnified; the utmost damage which fie could have sustained, was the difference between the neii proceeds of the sale m New forK, and those which would have resulted from a sale at Orleans. If -the appellees had recovered in their action of covenant, tiic difference between the nett amount of the sale and the debt due io them, then the appellant (admitting for sake of argument, that his action was sustained by the proof, and that the sale yielded less than n sale in Orleans would have done,) would have been entitled to whatever the avails of a sale in Orleans, would have -exceeded those of the actual sale in New York. Bui; the jury considered both cases ‘ogethcr, as if there liad been but one suit, in wnichthe pleadings gave them a. right to find for either parly, damages according to all the facts; and after deciding on all the proof in both suits, they found a verdict against the appellees in their ac•tion of covenant, and' returned a verdict for a small amount in damages, in favor of the appellant. Considering the case as the jury did, it is evident that the proof did not justify tne verdict for the appellant in the action of assumpsit, unless the jury had a right to infer that a sale at Orleans would have yielded a.nett amount, exceeding that to which the appellees were entitled. And it is perfectly clear, that there is no fact in the case which can .justify an i iferencc that a sale at Orleans would have produced as much as $'2,777. It is proved positively that the fifty nine hogsheads of tobacco, were “middling quality;” and from other p'oof and circumstances, wc would be compelled to infer that they were not of the first quality. The price of such tobacco at Orleans, on and alter the 22nd of June, L82.I, did not, according io a great preponderance of evidence, exceed $2 50 cents a hundred; and the maximum at which it could be fixed, according to any fact in the case, was §3 50 cenls. Now. even if ihe jury would have been justified in fixingihe price at the maximum, the nett proceeds of a sale at Orleans would not liave amounted to $2,777. According to the only positive proof, the fifty, nine hogs; ends ■weighed not more than seventy thousand pounds; and the appellant, even according io the hypothetic»! opinion of one of his witnesses, could not claim more than seventy eight thousand one hundred and .-lx-con pounds; two and a half per cent was the commission *616 for selling. Without considering any other costs, it is manifest that even seventy eight thousand one hundred and sixteen pounds of tobacco, at $3 50 cents a hundred, would not have sold for $2,777, after deducting the charges incident on the sale. Then, according to the most favorable hypothesis, which the jury could llave indulged for the appellant, the fifty nine hogsheads of tobacco would not, if they had been sold at Orleans, have produced a nett amount sufficient to pay the debt due to the appellees. And consequenily, the circuit court did not err in granting a new trial in the* action of assumpsit. And it results as a corollary that: it was right to award a new trial in the action of covenant, if the facts will sustain that action; and that they will, we are not permitted to doubt. For even if the appellees had expressly undertaken to sell the tobacco in Orleans, they'may maintain a suit fora brcack in the appellant’s covenant, in consequence of a fail-* ure by him, cither to draw on his commission merchant in their favor, for $2,777 30 cents, orto consign to them, or one of them, a sufficient quantity of tobacco, to enable them to make, by a sale of it at Orleans, a nett sum equal to $2,777 30 cents. If only one hogshead had been consigned, surely covenant might have been maintained against the appellant for failing to consign a sufficient quantity of tobacco to pay the debt acknowledged to be due; and the fact, that the one hogshead had not been sold, could not defeat the action. Besides, in this case, there was no consignment, according to, or in any discharge of the covenant. The covenant bound the appellant to consign the tobacco which he was about to export from Kentucky, This was not done. The appellees did not receive the iifly nine hogsheads in discharge oí the covenant. The tobacco was delivered to them by Robert Allen, (who ■owned a part of it, or had bought it at Orleans,) on a new contract, by which they promised to appropriate the .proceeds of its sale to the credit of James Allen. As .Tames Allen did not consign of the tobacco exported by him, a sufficient quantity to pay the $2,777 30 cents, the appellees had a cause of action on the covenant. And we are of opinion, that no fact contained in the record would have been available to defeat the action under any plea that could have been fded, even *617 tí the delivery of Ihe fifty nine hogsheads could be considered as made according lo Ihe cove.nnnl. °
Hardin and, Crittenden, for appellant; Muiros and Denny,, for appellees.
Wherefore, the circuit court .did nol err in anew trial on the motion of the appellees; and consequently, as I lie evidence, whether conclusive or not, was such as to authorize the last verdicts; the judgments of the eircuifc court thereon must be affirmed.
Note. — Judge IJiioicxEit diil not sit in this ease.